# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

AZUJHON KENNETH SIMS,

              Plaintiff,

  v.

ROMEO ARANAS, et. al.,

              Defendants.

3:17-cv-00543-RCJ-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]

This case involves a civil rights action filed by Plaintiff Azujhon Kenneth Sims ("Plaintiff") against Defendant Dr. Marsha Johns ("Defendant"). Currently pending before the court is Defendant's motion for summary judgment. (ECF Nos. 34, 36[2]). Plaintiff did not oppose the motion and no reply was filed. Having thoroughly reviewed the record and the documents listed above, the court recommends that Defendant's motion for summary judgment be granted.

## I.  BACKGROUND

### A.  Procedural History

Plaintiff was an inmate in the custody of the Nevada Department of Corrections ("NDOC"). Proceeding *pro se*, Plaintiff filed the instant civil rights action pursuant to 42 U.S.C. § 1983 against several defendants related to events that took place while he was housed at the Northern Nevada Correctional Center ("NNCC"). (ECF Nos. 1, 1-1.) Pursuant

---

[1] This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. This action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] ECF No. 36 contains sealed documents filed in support of the motion for summary judgment.

to 28 U.S.C. § 1915A(a), the District Court screened Plaintiff's complaint on January 14, 2019. (ECF No. 8). The court determined Plaintiff could proceed with the following claims: (1) Count I: Eighth Amendment violation for deliberate indifference to Plaintiff's serious medical needs against Defendants "Triage Nurse(s) and Clinic Lead Nurse(s)"; and, (2) Count III: Eight Amendment violation for deliberate indifferent to Plaintiff's serious medical needs against Defendant and the "Triage Nurse(s) and Clinic Lead Nurse(s)". (ECF No. 8 at 6-9). The Screening Order specifically indicated that Counts I and III could proceed against "Triage Nurse(s) and Clinic Lead Nurse(s) when the plaintiff learns their identifies." (*Id.* at 6; 9). To date, Plaintiff has never identified or substituted any named parties for the "Triage Nurse(s)" or "Clinic Lead Nurse(s)". Thus, the only named defendant that remains in this case is Dr. Marsha Johns.

**B.     Factual Background**

In the fall of 2016, Plaintiff was suffering from rectal pain. He was seen by Dr. Marks at NNCC on October 21, 2016, who prescribed him with antibiotics to address these issues. (ECF No. 36-1 at 11; ECF No. 36-2 at 10). On November 8, 2016, Plaintiff submitted a "medical kite" requesting to be seen again for his rectal pain stating that the previously prescribed antibiotics did not resolve the issue. (ECF No. 34-2 at 2). A "medical kite" is effectively a note submitted by an inmate requesting medical services due to an illness or medical condition. In order to submit a medical kite, the inmate places the kite into a box. (ECF No. 34-7 at ¶ 5). The kites are later collected and triaged by the nursing staff, who review and prioritize the kites and schedule any needed appointments. (*Id.*; *see also* ECF No. 34-6 at ¶ 8.) Medical kites are not received or reviewed by doctors prior to a medical appointment. (ECF No. 34-6 at ¶ 8). Although the November 8, 2016 kite was marked "received," it is unclear what, if any, action was taken by the nursing staff at that time.

On November 28, 2016 and January 3, 2017, Plaintiff submitted two additional medical kites again stating that he continued experience rectal pain. (ECF Nos. 34-2, 34-3, 34-4). Finally, on January 19, 2017, Plaintiff submitted a fourth medical kite, again related

to his rectal pain. (ECF No. 34-5). In this kite, Plaintiff expressly requested the prescription he was provided in his previous appointment be refilled, which was done on January 25, 2017. (*Id.*)

Plaintiff was seen by Defendant for the first time on January 25, 2017. (ECF No. 36-1 at 10.) Prior to this appointment, Defendant had no contact with Plaintiff, was unaware of Plaintiff's medical condition, and had not seen any of Plaintiff's medical kites. (*Id.* at ¶ 7-9). At this appointment, Defendant learned about Sims and his medical condition related to his rectal pain for the first time. After examining Plaintiff, Defendant prescribed Plaintiff suppositories. (*Id.* at ¶ 6; ECF No. 36-2 at 9). A few days later, it was determined that the suppositories were no longer available at the NDOC pharmacy. (ECF No. 36-2 at 9). As a result, on January 31, 2017, it appears that Defendant changed the prescription from the suppositories to a hemorrhoid cream, which Defendant contends contained the same active medical ingredients. (*Id.*; ECF No. 34 at 4). Based on the treatment notes and other medical documentation, it does not appear that Defendant had any more involvement with Plaintiff or his medical condition.

Rather, it appears that on February 8, 2017 that Plaintiff was referred by a different medical provider to Dr. King to address his recurring issues with his hemorrhoids and rectal pain by a different medical provider. (*Id.*) Plaintiff was seen by Dr. King on March 13, 2017 who diagnosed Plaintiff with an anterior anal fissure and scheduled him for an internal sphincterotomy to repair the fissure. (ECF No. 36-4).

### C. Motion for Summary Judgment

On February 26, 2020, Defendant filed a motion for summary judgment seeking dismissal of this case. (ECF No. 34). Defendant argues Plaintiff's claim must be dismissed because: (1) there is no evidence that establishes Defendant was deliberately indifferent to Plaintiff's medical needs; and, (2) she is entitled to qualified immunity. (*Id.*)

Upon the filing of the motion for summary judgment, the District Court entered a minute order advising Plaintiff of his obligations to file an opposition or responsive document

to the motion pursuant to *Klingele v. Eikenberry* and *Rand v. Rowland*. (ECF No. 38). However, Plaintiff did not file a response or opposition to the motion. Thereafter, the court entered an order *sua sponte* granting Plaintiff an extension of time to file an opposition or response up to and including Friday, April 10, 2019. (ECF No. 39). Plaintiff again failed to file any opposition or responsive document.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving

party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

///

///

///

III.     ANALYSIS

     A.     **Eighth Amendment: Deliberate Indifference to a Serious Medical Need**

Plaintiff alleges Defendant violated his Eighth Amendment rights due to her deliberate indifference to his serious medical needs by failing to properly treat his rectal pain. A prisoner's claim of inadequate medical care arises under the Eighth Amendment. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). To prevail in an action alleging cruel and unusual punishment, a plaintiff's case must satisfy an objective standard—that the deprivation was serious enough to amount to cruel and unusual punishment; and a subjective standard—deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991). A prison official violates the Eighth Amendment when he responds with deliberate indifference to an inmate's serious medical needs. *Farmer*, 511 U.S. at 834.

The objective requirement of a "serious medical need" is met if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle*, 429 U.S. at 104). In this circuit, examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. To prove deliberate indifference, a plaintiff must demonstrate that prison staff denied, delayed, or

intentionally interfered with medical treatment, or that the manner in which prison staff provided medical care indicated deliberate indifference; and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Prison officials have wide discretion when determining the nature and extent of medical treatment to provide to inmates in their care. *See Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). Prison medical staff do not violate the Eighth Amendment simply because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

Defendant does not dispute that Plaintiff's alleged rectal issues constitute a serious medical need under the objective standard. (ECF No. 34 at 7). However, Defendant asserts there is no evidence to establish that Defendant was deliberately indifferent to Plaintiff's medical needs under the subjective standard. (*Id.*) After a careful review of the undisputed evidence presented in this case, the court agrees.

As noted above, to prove deliberate indifference under the subjective standard, a plaintiff must demonstrate that prison staff "denied, delayed, or intentionally interfered with medical treatment, or that the manner in which prison staff provided medical care indicated deliberate indifference; and that plaintiff sustained damages as a result of such conduct." *Hutchinson*, 838 F.2d at 394. However, the undisputed evidence in the record establishes that Defendant never denied Plaintiff any type of needed medical care nor is there any evidence that Defendant was responsible for any delay or intentional interference with any medical care in this case.

The evidence is undisputed that Plaintiff's issues began in October 2016. However, the first Defendant learned of Plaintiff or his medical conditions was on January 25, 2017, when Plaintiff was seen by Defendant for a medical appointment. (ECF No. 36-1 at 10.) Prior to this time, it is undisputed that Defendant had no contact with Plaintiff, was unaware of Plaintiff's medical condition, and had not seen any of Plaintiff's medical kites. (*Id.* at ¶ 7-

1 9). At this appointment, Defendant learned about Plaintiff's medical condition and promptly
2 provided him a prescription for suppositories. (*Id.* at ¶ 6; ECF No. 36-2 at 9). When it was
3 later determined that the suppositories were no longer available at the NDOC pharmacy,
4 Defendant updated the prescription for hemorrhoid cream. (*Id.*) There is no evidence in the
5 record to establish that the substitution of the cream for the suppository was unreasonable
6 under the circumstances. More critically, there is no evidence in the record establishing that
7 this change was done for the purpose of denying Plaintiff of medical treatment.

8 Moreover, there is also no evidence in the record that Defendant took any steps to
9 delay Plaintiff from seeing any doctor or medical provider or in any way interfered with
10 scheduling of medical treatment for Plaintiff. Rather, it is undisputed that Defendant, who
11 is a doctor at NDOC, did not receive, triage or otherwise respond to any of the medical kites
12 for Plaintiff. (ECF No. 34-7 at ¶¶ 5-6; ECF No. 34-6 at ¶ 8). Moreover, it is further disputed
13 that Defendant did not have any involvement in scheduling any medical appointments for
14 Plaintiff. (*Id.*)

15 Based on the undisputed evidence in the record, the court finds that there are no
16 material issues of fact to be resolved as to Plaintiff's claim against Defendant. Rather, the
17 undisputed evidence establishes that Plaintiff could not prevail against Defendant as a
18 matter of law. Therefore, the court recommends that Defendant's motion for summary
19 judgment (ECF No. 34) be granted.

20     **B.**    **Qualified Immunity**

21 Defendant argues even if she committed any constitutional violations, she is entitled
22 to qualified immunity. The defense of qualified immunity protects "government officials...from
23 liability for civil damages insofar as their conduct does not violate clearly established
24 statutory or constitutional rights of which a reasonable person would have known." *Harlow*
25 *v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity
26 must determine whether the plaintiff has alleged the deprivation of an actual constitutional
27 right and whether the right was clearly established, such that it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The evidence must be viewed in the light most favorable to the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

Because this court finds Defendant is entitled to summary judgment on the merits of the Eighth Amendment claim, there is no reason to reach the qualified immunity issue in this case. Thus, this is not a case where qualified immunity need be determined.

### C. Remaining Claims

As noted above, when this lawsuit was filed, Plaintiff alleged claims against numerous defendants. (ECF No. 1-1). However, at screening, the Court dismissed all claims except the following: (1) Count I: Eighth Amendment violation for deliberate indifference to Plaintiff's serious medical needs against Defendants "Triage Nurse(s) and Clinic Lead Nurse(s)"; and, (2) Count III: Eight Amendment violation for deliberate indifferent to Plaintiff's serious medical needs against Defendant and the "Triage Nurse(s) and Clinic Lead Nurse(s)". (ECF No. 8 at 6-9). The Screening Order specifically indicated that Counts I and III could proceed against "Triage Nurse(s) and Clinic Lead Nurse(s) when the plaintiff learns their identifies." (*Id.* at 6; 9). To date, however, Plaintiff never identified any of the previously unidentified defendants in this matter nor did he ever move to substitute the actual names of these individuals in order to proceed with the claims against them.

Discovery closed in this case on January 27, 2020. (ECF No. 32). Also, the time for amending pleadings or substituting any parties has now passed. (*Id.*) Therefore, the court recommends that any remaining claims in this lawsuit pertaining to the unknown defendants described only as "Triage Nurse(s) and Clinic Lead Nurse(s)" should likewise be dismissed.

### IV. CONCLUSION

Based on the foregoing, the court recommends that Defendant's motion for summary judgment (ECF No. 34) be granted. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendant's motion for summary judgment (ECF No. 34) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that all remaining claims alleged against "Triage Nurse(s) and Clinic Lead Nurse(s)" be **DISMISSED** from this action; and

**IT IS FURTHER RECOMMENDED** that the clerk enter judgment for Defendant and close this case.

**DATED:** April 28, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**